MINERALS ENGINEERING CO., A CORPORATION, PLAINTIFF AND RESPONDENT, *v.* M A R T H A GREENE, TREASURER BEAVERHEAD COUNTY, AND STATE BOARD OF EQUALIZATION, ET AL., DEFENDANTS AND APPELLANTS.

No. 9738.

Submitted February 20, 1957. Decided March 20, 1957.

308 Pac. (2d) 977.

120

Mr. Arnold H. Olsen, former Atty. Gen., Mr. Forrest H. Anderson, Atty. Gen., Mr. William F. Crowley, Asst. Atty. Gen., Mr. H. O. Vralsted, Sp. Asst. Atty. Gen., and Tax Counsel, Board of Equalization, Mr. Harold J. Pinsoneault, Deputy Atty. Gen. and Tax Counsel, Board of Equalization, Mr. Carl M. Davis, Co. Atty., Dillon, for appellants.

Mr. Hugh D. Galusha, Jr., Helena, Mr. Leonard A. Schulz, Dillon, Mr. A. W. Scribner, Helena, for respondent.

Mr. Vralsted, Mr. Scribner and Mr. Galusha argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal by Martha Greene, as County Treasurer of Beaverhead County, Montana, and J. F. Reid, E. J. Byrne and W. J. Winters, individually, and as members of and constituting the State Board of Equalization.

Appellants and respondents, the parties herein, will hereafter be referred to as plaintiff corporation and defendants, or the Board, respectively.

This is an appeal by the above-named defendants from a judgment entered against them and in favor of the plaintiff mining corporation.

There is no dispute as to the material facts.

The plaintiff was and is a foreign corporation, organized under the laws of the State of Colorado, and duly authorized and doing business in the State of Montana, and during all times herein, was and is engaged in the business of mining tungsten ores from properties within Beaverhead County, Montana.

The plaintiff filed its sworn statement and return of gross

yield or proceeds for the calendar year 1954, with the defendant Board, as required by R.C.M. 1947, section 84-5402, which statement disclosed that its gross proceeds or yield was the sum of $2,588,615.62, and claiming total statutory deductions of some $2,178,154.51, under the provisions of R.C.M. 1947, section 84-5403.

The Board, from said statement and report, ascertained and determined the net proceeds of plaintiff corporation's mining operations for said year by subtracting the statutory costs as adjusted from the said gross proceeds, which determined the net proceeds of plaintiff's operations for the calendar year of 1954 to be the sum of $410,461.11, and transmitted the same to the assessor of Beaverhead County in accordance with R.C.M. 1947, section 84-5408. Said assessor entered the valuation of $410,461.11 upon the assessment roll of net proceeds of mines and a tax of $36,896.34 was computed, levied and assessed thereon for the calendar year of 1954.

The statement and report disclosed that the plaintiff corporation produced from said mines in Beaverhead County for the calendar year 1954, 41,812 short ton units of tungsten trioxide ($WO_3$), which it sold direct to the General Services Administration, and the General Services Administration paid direct to the plaintiff corporation for the 41,812 short ton units of tungsten trioxide, the total sum of $2,588,615.62.

The total adjusted deductions of $2,178,154.51 were made up of the following, to-wit:

| | |
|---|---|
| Special services, office, travel, etc. | $ 669,641.63 |
| Cost of transporting crude ore | 135,416.15 |
| Cost of reduction or milling | 421,189.16 |
| Cost of marketing and conversion to money | 875,333.22 |
| Cost of repairs and replacements | 7,031.59 |
| Depreciation of reduction works, mills and smelters | 69,542.76 |
| For the total of | $2,178,154.51 |

On or about August 16, 1955, plaintiff corporation submitted an amended statement, return and report with the adjusted deductions, but also claiming no net proceeds and made written

application to the State Board of Equalization to have the assessment corrected or changed. Upon the hearing before the Board, the plaintiff corporation urged that the assessment of net proceeds should be reduced from $410,461.11 to zero dollars, contending that the gross yield and value of the 41,812 short ton units of tungsten trioxide ($WO_3$) amounted to only $1,471,782.40 and that the sum of $1,116,833.22 of the said total amount of $2,588,615.62, paid to plaintiff corporation by the General Services Administration, constituted a premium, incentive or bonus payment, and was and is not subject to taxation under chapter 54 of Title 84, R.C.M. 1947, as amended. The Board held a hearing on the amended report.

The State Board of Equalization after the hearing, and on or about September 13, 1955, entered its order denying the application of plaintiff corporation and refusing to set aside or change its former computation of the net proceeds.

Plaintiff corporation then paid under written protest to Martha Greene, as County Treasurer of Beaverhead County, the tax so assessed amounting to the sum of $36,896.34 and thereafter brought this action in the district court of Beaverhead County to recover from the defendants the sum of $36,-896.34 so paid under protest and its costs.

The matter came on for trial before the Honorable Victor H. Fall, judge presiding. After hearing, the district court made and filed its findings of fact and conclusions of law, and in accordance therewith, made and filed judgment therein in favor of plaintiff corporation, the pertinent part thereof being as follows:

"It is ordered and adjudged that the Minerals Engineering Company, a corporation, plaintiff herein, do have and recover of and from Martha Greene, as County Treasurer of Beaverhead County, a political subdivision of the State of Montana, State Board of Equalization of the State of Montana, and J. F. Reid, E. J. Byrne and W. J. Winters, as members of and constituting said Board, defendants, and each of them, the sum

of $36,896.34, together with said plaintiff's costs and disbursements incurred in this action.''

From this judgment the defendants appealed.

The plaintiff corporation admits that said corporation could sell its tungsten to anyone it might choose; that it did sell its entire output from its Montana mining operations in the calendar year 1954, amounting to 41,812 short ton units, to the General Services Administration direct for the amount of $63 per short ton unit of tungsten trioxide for the total sum of $2,588,615.62; that its statutory deductions as hereinabove noted were $2,178,154.51.

Plaintiff corporation contended unsuccessfully before the Board, but successfully before the district court, and makes the same contention here, which shortly stated is, that the open market or the New York market with duty paid during the calendar year 1954 averaged $35.20 per short ton unit of tungsten trioxide; that the $35.20 or the total sum of $1,471,782.40 should be used in determining the tax base and the net proceeds, and that the difference between the $63 paid to the corporation and th $35.20 in the total amount of $1,116,833.22, should be considered as a bonus, premium or incentive payment and under this court's decision in Klies v. Linnane, 117 Mont. 59, 156 Pac. (2d) 183, and the law, such amount is not a part of the gross or net proceeds and therefore not taxable, and on that basis, with its statutory deductions of $2,178,154.51, the plaintiff corporation would have no net proceeds and therefore no net proceeds tax.

Defendants assert that there is no part of the purchase price of the tungsten received from the General Services Administration that can in any manner be considered as a bonus, premium or incentive payment and that the plaintiff corporation may not so evade the express provisions of the net proceeds tax.

The fact remains that the plaintiff corporation was paid direct for the 41,812 short tons of tungsten by the purchaser of said minerals, the sum of $2,588,615.62, as originally reported

to the Board, and deducting its cost of operation in the total sum of $2,178,154.51, that the net proceeds for the year of 1954 was $410,461.11 on which the tax of $36,896.34 was correctly assessed and levied.

The question presented is, whether the plaintiff corporation under the facts and the applicable law, is exempt from the payment of the net proceeds tax on the difference between the price paid to it by the General Services Administration, a Federal Government instrumentality, of $63 and the New York market of $35.20.

The question here is essentially one of local or state law.

The Constitution of Montana as pertinent here provides:

Section 1, art. XII. ''The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of *all property,* * * * '' Emphasis supplied.

Section 2, art. XII, of the Montana Constitution explicitly and exclusively provides the property that is *exempt* from taxation and the kind of property that *may be exempted* from taxation, neither of which is involved herein. Emphasis supplied.

Section 3, art. XII, declares that ''the annual net proceeds of all mines and mining claims *shall be taxed as provided by law.''* Emphasis supplied.

Section 7, art. XII, provides: ''The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations, in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them and not by this constitution exempted from taxation.

Section 17, art. XII, declares that ''The word property as used in this article is hereby declared to include moneys, credits, bonds, stocks, franchise and all matters and things (real, personal and mixed) capable of private ownership, * * *.''

Section 15, art. XII, creates the State Board of Equalization and sets forth its composition and duties, and also provides that the State Board of Equalization shall also "have such other powers, and perform such other duties relating to taxation as may be prescribed by law."

The constitutional provisions are mandatory and prohibitory. Mont. Const., art. III, section 29.

The Legislature has provided by R.C.M. 1947, section 84-5403, that "The state board of equalization shall calculate and compute from said returns the gross product yielded from such mine, and its gross value in dollars and cents for the year preceding the first day of January, and also shall calculate and compute the net proceeds in dollars and cents of said mine yielded to such person, corporation or association so engaged in mining which said net proceeds shall be ascertained and determined by subtracting from the value in dollars and cents of the gross product thereof" the allowable deductions in said section provided.

The Legislature further provided by R.C.M. 1947, section 84-5401, that *"the annual net proceeds of all mines and mining claims, shall be taxed as other personal property."* Emphasis supplied.

The gross product of the mining operations of plaintiff corporation for the calendar year of 1954, in dollars and cents, was $2,588,615.62, which amount was paid direct to plaintiff corporation, the producer. This amount it received as the gross value of its product. There can be no dispute as to the adjusted statutory deductions being the sum of $2,178,154.51, leaving net proceeds of plaintiff corporation based upon the net value of the ores produced, in the amount of $410,461.11.

The plaintiff corporation starts with the false premise, in its contention, that the difference between the price paid directly to it by the General Services Administration of $63 per short ton unit and the New York market price, duty paid, of $32.50, should be considered as a government bonus or sub-

sidy, but this does not square with the facts and cannot be so considered.

We are not here dealing with any government bonus, subsidy, premium or incentive payment. The price received by plaintiff corporation of $63 per short ton unit was the free choice of the plaintiff corporation. This is borne out by the direct examination of Mr. Raymond G. Sullivan, the vice-president of plaintiff corporation, and a witness therefor in this case. In the district court he testified:

"Q. Are you, Mr. Sullivan, simply because you are a participating producer under the defense production act, obligated to sell all of your product produced within the United States to the General Services Administration? A. We are not.

"Q. Were you so obligated during the year 1954? A. We were not.

"Q. You could if you had so chosen sold your product to private consumers of tungsten within the United States? A. we could have.

"Q. And what price would you have received if you had so elected? A. We would have received the average prices for the open free world market of $35.20."

It is apparent that there was no controlled market involved. Here we have a mining corporation exercising its free choice, in private enterprise, of selling its mineral product wherever it could obtain the best price. The best price it could secure was from the General Services Administration. There being no government bonus or subsidy involved in this case, plaintiff corporation's contention as to R.C.M. 1947, section 84-4176, is not applicable.

Plaintiff also relies upon the provisions of R.C.M. 1947, section 84-5407. This section only comes into play when any person, corporation or association, engaged in mining operations and concerning the mined product, makes a *wilfully false* or *fraudulent* statement and report to the State Board of Equalization. There is no charge or showing of any wilfully false or fraudulent statements or reports in this record.

The next contention of plaintiff corporation is that the question here is ruled by the decision of the Klies v. Linnane case, supra. We need not determine here whether the differences between this case and the Klies case would call for a different result. There are differences in the two cases. In the Klies case, supra, the sale price of the mineral was arbitrarily set by the O. P. A. The producer sold at that set price on the open market to any purchaser, and the Metals Reserve Corporation then paid the producer a certain amount over and above such fixed price, supposedly to encourage production, but those payments were made only upon the production in excess of the defined quota. The Klies case was written in 1945. Since that decision was written, the same question has been passed upon in several jurisdictions in well-reasoned opinions, holding that such so-called subsidy or incentive payments were as much a part of the mine proceeds as though received from the purchaser or ores, and subject to the tax. Compare Consolidated Copper-mines Corp. v. State, 68 Nev. 298 Pac. (2d) 197; Kennecott Copper Corp. v. State Tax Comm., 116 Utah 556, 212 Pac. (2d) 187; Kennecott Copper Corp. v. State Tax Comm., 118 Utah 140, 221 Pac. (2d) 857; Combined Metals Reduction Co. v. State Tax Comm., 111 Utah 156, 176 Pac. (2d) 614; United States Smelting, Refining & Mining Co. v. Haynes, 111 Utah 172, 176 Pac. (2d) 622; Nevada Half Moon Mining Co. v. Combined Metals Reduction Co., 10 Cir., 176 F. (2d) 73, 75, certiorari denied 338 U.S. 943, 70 S. Ct. 429, 94 L. Ed. 581; Salt Lake County v. Kennecott Copper Corp., 10 Cir., 163 F. (2d) 484, 487, certiorari denied 333 U.S. 832, 68 S. Ct. 458, 459, 92 L. Ed. 1116. In this latter Federal case, the court said:

"The preimium or subsidy payments were taken into consideration only as an element in the yardstick for measuring the value of the properties for purposes of ad valorem taxation. The inclusion of the premium or subsidy payments in the fixing of the tax base did not amount to a tax against the United States, its instrumentalities, its activities, or its property; and it did

not contravene any constitutional implication forbidding a tax under state law against the United States or its interests.''

In the similar case of Nevada Half Moon Mining Co. v. Combined Metals Reduction Co., supra [176 F. (2d) 75], the Federal Court, in speaking of such subsidy or bonus payments, said:

''But the sums which Metals Reserve Company paid to Combined accrued to the latter as the proximate result of the production and processing of ores extracted from the premises as much as though they had been received from the purchaser of the ores.''

The reasoning in the foregoing decisions in our opinion is sound and states the law correctly. We therefore expressly overrule the holding in the case of Klies v. Linnane, 117 Mont. 59, 156 Pac. (2d) 183.

Under the facts and the applicable law in this case, it is apparent that the State Board of Equalization followed the law and was correct in finding, calculating and computing the gross product yielded to plaintiff corporation for the calendar year of 1954 was 41,812 short ton units of tungsten ore and that the gross value thereof in dollars and cents was the sum of $2,588,-615.62; that the allowable deductions under R.C.M. 1947, section 84-5402, were the adjusted total sum of $2,178,154.51, and in ascertaining and computing the net proceeds as the sum of $410,-461.11. It follows that said valuation was properly entered and spread upon the tax rolls of Beaverhead County by the assessor thereof and the tax in the sum of $36,896.34 being legally computed, levied and assessed is legal and final.

The judgment of the district court is reversed and set aside and this opinion shall be entered by the clerk of the court of the fifth judicial district of the State of Montana, in and for the County of Beaverhead, State of Montana, in conformity with R.C.M. 1947, section 93-8025, as the final judgment herein. Costs below and in this court to defendants.

Let remittitur be certified and issued forthwith.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES, ANGSTMAN, and ADAIR, concur.